**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**HILTON ALLEN,**
     **Petitioner,**

**v.**                             **Case No.:**    **4:12cv205/LC/CAS**

**JULIE L. JONES,**
     **Secretary, Florida
     Department of Corrections,
     Respondent.[1]**

---

## ORDER, REPORT AND RECOMMENDATION

On June 28, 2012, Petitioner Hilton Allen, proceeding pro se, filed an amended petition for a writ of habeas corpus filed under 28 U.S.C. § 2254  (doc. 9).  Respondent filed an answer and relevant portions of the state court record (doc. 21).  Petitioner filed two additional responses (docs. 15 & 18).  The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the amended § 2254 petition should be denied.

---

[1] Julie L. Jones is the current successor to Michael D. Crews as Secretary for the Department of Corrections and is automatically substituted as a party.  *See* Fed. R. Civ. P. 25(d)(1).

## State Court Proceedings

In June 2005, Petitioner was charged with sexual battery of a person twelve years of age or older by penetrating her vagina with his fingers without her consent. Petitioner was tried with his nephew, Jack Allen, who was also charged with sexual battery of the same victim. The facts, briefly stated, are on or about the night of May 10, 2005, Petitioner gave Jack Allen and the victim, with whom both defendants were previously acquainted, a ride to a McDonald's restaurant.  Petitioner then drove to a secluded country road where the victim testified that Jack Allen indicated that he wanted to have sexual intercourse with her, and she objected.  The victim testified that Petitioner got in the back seat of the car, forcibly undressed her, held her down and sexually battered her after which Jack Allen had sexual intercourse with her without her consent.  Petitioner testified that he drove the pair in his car on the night of the offense, but did not have any physical contact with the victim.  Petitioner testified that he left the car and walked away briefly while the victim and Jack Allen had consensual sexual relations. Jack Allen's defense was consent. After a jury trial,  both Petitioner and Jack Allen were convicted on their respective charges.  In September 2006, Petitioner was sentenced to seven years incarceration followed by seven years sex offender probation. The trial court also sentenced  Petitioner and Jack Allen as multiple perpetrators, thus reclassifying Petitioner's crime from a second degree felony sexual battery to a first degree felony under Florida's multiple perpetrator law.  This reclassification resulted in Petitioner being declared a sexual predator.  (Ex. A, doc. 21-1, p. 91).

Petitioner's direct appeal was dismissed; however, it was later reinstated as a

consequence of the ineffective assistance of his appellate counsel for failing to respond to an order to show cause concerning the absence of a timely initial brief. (Ex. G, doc. 21-2, p. 134). On August 4, 2008, the First District Court of Appeals reversed and remanded holding that the reclassification of Petitioner's crime from a second degree felony to a first degree felony was improper, but the First DCA did not reach the issue of Petitioner's designation as a sexual predator because he had not filed a timely notice of appeal from the order designating him as such. (Ex. K). The mandate issued August 20. *Allen v. State*, 986 So. 2d 694 (Fla. 1st DCA 2008). On November 4, 2008, Petitioner, who was not present at the hearing, was re-sentenced to the same length of incarceration and probation, but as a sex offender. Petitioner did not appeal.

In March 2009, while his case was pending on remand, Petitioner filed a state court habeas petition, which he later supplemented and amended. On April 16, 2009, the petition was dismissed. No mandate issued. *Allen v. State*, 8 So. 3d 463 (Fla. 1st DCA 2009). In August 2009, Petitioner filed a petition for prohibition/mandamus which he later amended. (Ex. R). The petition was denied. (Ex. S). No mandate issued. *Allen v. State*, 23 So. 3d 111 (Fla. 1st DCA 2009). On December 17, 2009, Petitioner filed a petition for a writ of certiorari in the First DCA. (Ex. U, doc. 21-3, pp. 31-36). The petition was dismissed for failure to comply with a court order. Petitioner sought discretionary review, but the Florida Supreme Court declined to accept jurisdiction. *Allen v. State*, 49 So. 3d 1266 (Fla. 2010).

In August 2010, Petitioner filed a rule 3.850 motion which was denied with leave to amend (Ex. Z, doc. 21-3, pp. 72-136 & Ex. AA, doc. 21-4, pp. 39-40). After an

amendment and several supplemental filings, the postconviction court issued a show cause order directed to the State concerning whether Petitioner should  be re-sentenced in light of a claim he raised in his amended 3.850 motion which dealt with his not being present at his re-sentencing in August 2008. (*See* EE-1 & EE-2, doc. 21-6, pp. 63 & 65-66).  Counsel was appointed, and Petitioner was re-sentenced to the same sanctions on May 8, 2012. (Ex. GG, doc. 21-6, pp. 73-84).  No final ruling was made on the other claims in Petitioner's amended 3.850 motion, and no appeal was taken.  In February 2012, while his collateral proceeding and re-sentencing were underway, Petitioner filed a petition for a writ of certiorari in the First DCA.  (Ex. HH). The petition was dismissed as untimely.  (Ex. LL).  Mandate issued on June 22, 2012.  *Allen v. State*, 96 So. 3d 883 (Fla. 1st DCA 2012).

On April 19, 2012, Petitioner submitted his initial federal habeas petition (doc. 1) for mailing.  On June 28, 2012, Petitioner filed an amended petition (doc. 9).  The amended petition is now ripe for adjudication.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 529 U.S. 362 (2000); *Gill v. Mecusker*,

633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated

on the merits in State court proceedings,' § 2254(d), an additional restriction applies."

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  The federal court may not grant

relief unless the state court's adjudication of the claim:  (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).   "This is a

'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt.'"  *Cullen*, 131 S.

Ct. at 1398 (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) and *Woodford v.

Visciotti*, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was

before the state court that adjudicated the claim on the merits."  *Cullen*, 131 S. Ct. at

1388.

## Petitioner's Claims

Ground One:        Prosecutorial Misconduct

Petitioner states in his first ground for relief that the prosecutor filed a motion in

limine after DNA testing exonerated him as the source of two or more semen samples

taken from the victim, thus preventing him from informing the jury about the lack of

evidence tying him to the crime. (Doc. 9, p. 4).  While Petitioner captions his claim as

one of prosecutorial misconduct, he does not allege any specific misconduct or act of

bad faith on the part of the prosecutor in his habeas petition, but appears to be making

a due process claim.  Assuming that Petitioner is making a federal constitutional claim,

Respondent argues that the claim is procedurally barred because it was not raised on

direct appeal in state court.

     1.     State Court Proceedings

     Florida statutory law, § 794.022(2), generally prohibits evidence of prior

consensual sexual activity between the victim and any person other than the defendant.

The record reflects that prior to trial the State moved in limine to prevent the defense

from adducing evidence that "the victim had previously engaged in sexual activity with

any person other than the Defendants, or that a second, unidentified semen sample

was found during the sexual assault examination of the victim."  (Ex. A, doc. 21-1, p.

60).  The motion also declared that while Petitioner's co-defendant, Jack Allen, was the

source of one of the semen samples, "the State will not claim or suggest that Hilton

Allen is the source of the second, unidentified semen sample."  (*Id.* at 61).  Finally, while

acknowledging that consent would likely be an issue at trial, the motion declared that

"the prejudicial value of showing the jury that [the victim] may have had sex with

someone else substantially outweighs any remote probative value it may have. . . . it will

serve no purpose other than to confuse, distract, and mislead the jury from the relevant

issues at hand." (*Id.* at 62).  The record indicates that there was a hearing on the

motion, after which the motion was granted.  (*Id.* at 63). In his direct appeal, Petitioner

did not raise a claim of prosecutorial misconduct, but raised only one issue challenging

his post-sentencing designation as a sexual predator.  (*See* Ex. H, doc. 21-2, pp. 138-

161).

      2.     Clearly Established Supreme Court Law

It is a long-standing prerequisite to the filing of a federal habeas corpus petition

that the petitioner first exhaust available state court remedies, 28 U.S.C. §2254(b)(1),[2]

thereby giving the State the "'opportunity to pass upon and correct' alleged violations of

its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting

*Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)).  To satisfy the

exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate

state court, alerting that court to the federal nature of the claim.  *Duncan*, 513 U.S. at

365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be

litigated under state procedural rules is considered procedurally defaulted, *i.e.*,

---

[2] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State;
or
        (B) (i)  there is an absence of available State corrective process; or
           (ii)  circumstances exist that render such process ineffective to protect the
rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of
the State, within the meaning of this section, if he has the right under the law of the State to raise,
by any available procedure, the question presented.

procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 847-848; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This Court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, a petitioner must show cause and prejudice or a fundamental miscarriage of justice.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497(1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.*  To satisfy the miscarriage of justice exception, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

3.     Federal Review of Claim

Under Florida law, claims of prosecutorial misconduct should be raised on direct appeal.  *See Johnson v. State*, 104 So. 3d 1010, 1029 (Fla. 2012)(claims of prosecutorial misconduct should be challenged on direct appeal and are procedurally barred on collateral review); *Spencer v. State*, 842 So. 2d 52, 60-61 (Fla. 2003)(claims

of prosecutorial misconduct were procedurally barred because each alleged violation appeared in the trial record and should have been raised on direct appeal); *Valentine v. State*, 98 So. 3d 44, 58 (Fla. 2012).  Petitioner did not raise a claim of prosecutorial misconduct in his direct appeal, thus he failed to give the state court the opportunity to resolve any constitutional issues with regard to this claim.  *See O'Sullivan*, 526 U.S. at 845.  While Petitioner did raise this claim in his postconviction proceedings,[3] in its order dated September 15, 2010, the postconviction court denied Petitioner's initial 3.850 motion and provided leave to amend, summarily denying ground one holding that it was one of several claims that did "not state a cause of action under Rule 3.850 and are matters that could have been or should have been raised on direct appeal."  (Ex. AA, doc. 21-4, p. 39).  Petitioner again raised this claim in his amended 3.850 motion, filed in November 2010.  (Ex. BB, doc. 21-4, p. 86).  Petitioner argued that restricting the defense from arguing that the victim had engaged in sexual activity with other individuals was an "attempt to mislead the jury."  (*Id.*).  As discussed *supra*, no final ruling was made on Petitioner's amended 3.850 motion.   However, in 2012, after his collateral proceedings were underway, Petitioner filed a petition for a writ of certiorari (Ex. HH), and the First DCA issued an order to show cause why the petition should not be "denied for failure to timely file the petition."  (Ex. JJ).  Respondent asserts that the court issued the show cause order because it was considering the possibility of treating

---

[3] Petitioner filed his initial 3.850 motion in August 2010, raising thirty-nine grounds. (Ex. Z, doc. 21-3, p. 72).  In his first ground for relief Petitioner argued that the State's motion in limine "denied due process of a fair trial and impartial trial" because the defense was not allowed to ask the victim about any sexual relations with individuals other than the accused nor offer any evidence about the victim's sexual relations with other individuals.  (*Id.* at 80).

the petition as an appeal of right.  The First DCA ultimately dismissed the petition as untimely. (Ex. LL).  Thus, even if the petition for certiorari is considered a belated direct appeal, any claims raised therein are procedurally barred from consideration. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)("[Where] the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Petitioner did not raise this claim on direct appeal, and the postconviction court found it procedurally defaulted when it denied his motion without prejudice to amend. The First DCA dismissed his certiorari petition as untimely. Therefore, this claim was not properly exhausted in state court and is now barred from federal habeas review.  *See O'Sullivan*, 526 U.S. at 848; *LeCroy v. Sec.'y, Fla. Dep't of Corr.*, 421 F. 3d 1237, 1260 (11th Cir.  2005)("If, however, the claim could have been raised [on direct appeal], but was not, it would be barred from any state collateral review, and likewise barred from federal review.")(quotation omitted)).  Petitioner has not alleged any cause, prejudice or a fundamental miscarriage of justice to overcome the procedural default.  Accordingly, Petitioner is not entitled to habeas relief, and ground one is denied.

Ground Two:        Bias and Prejudice of Jury

Petitioner alleges that the jury in his case was biased and prejudiced because they were not attentive during the trial and "paid no attention to the lack of evidence" against him.  (Doc. 9, p. 4).  Respondent contends that this claim is procedurally barred because it was not raised on direct appeal in state court.

1.        State Court Proceedings

Petitioner did not raise this claim on direct appeal, but raised it in both his initial and amended 3.850 motions.  In its nonfinal order, the postconviction court summarily denied this claim because it should have been raised on direct appeal.  (Ex. AA, doc. 21-4, p. 39).

2.      Clearly Established Supreme Court Law

The law regarding procedural default is set forth *supra*.

3.      Federal Review of Claim

Because the claim of juror bias should have been brought on direct appeal, this claim is not exhausted for the same reasons explained in Ground One, section three, *supra*.  Federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.  *Bailey*, 172 F.3d at 1305.  Petitioner has not alleged any cause, prejudice or a fundamental miscarriage of justice to overcome the procedural default.  Therefore, this claim is barred from federal habeas review.  Even if this claim were not procedurally defaulted, Petitioner has failed to allege any unconstitutional bias or prejudice of the jury based on alleged juror inattention.  Accordingly, Petitioner is not entitled to habeas relief, and ground two is denied.

Ground Three:      Ineffective Assistance of Counsel/ Motion in Limine

Petitioner argues that his counsel was ineffective by allowing the State to prevail on the motion in limine filed pursuant to Fla. Stat. § 794.022(2), which prevented the jury from learning about the unidentified second semen source found during an examination of the victim.  (Doc. 9, p. 5).  Respondent contends that this claim is

procedurally barred because it was not properly exhausted in state court.

1.      State Court Proceedings

Petitioner raised this issue in his initial and amended 3.850 motions. In its

nonfinal order summarily denying Petitioner's initial motion and providing leave to

amend, the postconviction court denied this claim because it "[did] not coherently state

a cause of action for professionally deficient performance of trial counsel nor does

Defendant coherently allege prejudice resulting from the deficiency." (Ex. AA, doc. 21-

4, p. 39). While Petitioner filed an amendment and several supplemental pleadings, no

final order addressing Petitioner's 3.850 motion was ever entered. Instead, Petitioner

was re-sentenced based on his absence from his 2008 re-sentencing hearing. Petitioner

did not appeal from this re-sentencing, but petitioned for certiorari in the First DCA. This

petition was dismissed as untimely. Petitioner did not move for a final order on his

amended postconviction motion in state court.

2.      Clearly Established Supreme Court Law

The law regarding procedural default is set forth *supra*. The standard for

evaluating claims of ineffective assistance of counsel is set forth in *Strickland v.*

*Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, a habeas petitioner

must show (1) deficient performance by counsel and (2) a reasonable probability that,

but for counsel's deficient performance, the result of the proceeding would have been

different. *Id.*, 466 U.S. at 687. It is a petitioner's burden to prove, by a preponderance

of the evidence, that counsel's performance was unreasonable and that he suffered

prejudice as a result thereof. *Id.* If a petitioner fails to make a showing as to either

performance or prejudice, he is not entitled to relief.  *Id.* at 697.  A reviewing court need

not address both components of the *Strickland* inquiry when a petitioner makes an

insufficient showing on one.  *Turner v. Crosby*, 339 F.3d 1247, 1279 (11th Cir. 2003);

*Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the

test must be satisfied in order to show a violation of the Sixth Amendment, the court

need not address the performance prong if the defendant cannot meet the prejudice

prong, or vice versa.") (citation omitted).

In determining whether counsel's performance was reasonable, the Court

instructed:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is
> all too tempting for a defendant to second-guess counsel's assistance
> after conviction or adverse sentence, and it is all too easy for a court,
> examining counsel's defense after it has proved unsuccessful, to conclude
> that a particular act or omission of counsel was unreasonable.  *Cf. Engle
> v. Isaac*, 456 U.S. 107, 133–134, 102 S. Ct. 1558, 1574–1575, 71 L. Ed.2
> d 783 (1982).  A fair assessment of attorney performance requires that
> every effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and to
> evaluate the conduct from counsel's perspective at the time.  Because of
> the difficulties inherent in making the evaluation, a court must indulge a
> strong presumption that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the defendant must overcome
> the presumption that, under the circumstances, the challenged action
> "might be considered sound trial strategy."  *See Michel v. Louisiana*,
> *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

*Strickland*, 466 U.S. at 689.  If the record is not complete regarding counsel's actions,

"then the courts should presume 'that what the particular defense lawyer did at trial—for

example, what witnesses he presented or did not present—were acts that some lawyer

might do.'" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v.

United States*, 218 F.3d 1305, 1314–15 n. 15 (11th Cir. 2000) (en banc)). The focus of

inquiry under the performance prong is "reasonableness under prevailing professional norms." Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994). "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting *Chandler*, 218 F.3d at 1317)). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions .'" *Id.* (quoting *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir.2001)).

As to the prejudice prong of the *Strickland* standard, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Strickland*, 466 U.S. at 693. The Court has also clarified, however, that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. *Id.*, 466 U.S. at 693–94. Instead,

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted

according to law. *Id.* at 694–95. "When a defendant challenges a conviction, the

question is whether there is a reasonable probability that, absent the errors, the

factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim
> must consider the totality of the evidence before the judge or jury. Some
> of the factual findings will have been unaffected by the errors, and factual
> findings that were affected will have been affected in different ways.
> Some errors will have had a pervasive effect on the inferences to be
> drawn from the evidence, altering the entire evidentiary picture, and some
> will have had an isolated, trivial effect. Moreover, a verdict or conclusion
> only weakly supported by the record is more likely to have been affected
> by errors than one with overwhelming record support. Taking the
> unaffected findings as a given, and taking due account of the effect of the
> errors on the remaining findings, a court making the prejudice inquiry must
> ask if the defendant has met the burden of showing that the decision
> reached would reasonably likely have been different absent the errors. . . .
> [T]he ultimate focus of inquiry must be on the fundamental fairness of the
> proceeding whose result is being challenged.

*Id.* at 695–96. Finally, the Supreme Court recently explained the interplay between

AEDPA's standard of review and the deferential standards established by *Strickland* as

follows:

> The standards created by *Strickland* and § 2254(d) are both "highly
> deferential," *id.*, at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320,
> 333, n. 7, 117 S. Ct. 2059, 138 L. Ed.2d 481 (1997), and when the two
> apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S.,
> at ——, 129 S. Ct. [1411] at 1420. The *Strickland* standard is a general
> one, so the range of reasonable applications is substantial. 556 U.S., at
> ——, 129 S. Ct. at 1420 . Federal habeas courts must guard against the
> danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d) applies, the question
> is not whether counsel's actions were reasonable. The question is whether
> there is any reasonable argument that counsel satisfied *Strickland*'s
> deferential standard.

*Harrington v. Richter*, *supra*, 562 U.S. at 105. Habeas claims of ineffective assistance,

of counsel, therefore, require "doubly deferential" judicial review under § 2254(d) and

*Strickland*, and petitioners only rarely prevail on this ground. *See Rogers*, 13 F.3d at 386. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356 (2010).

   3.   Federal Review of Claim

In processing Petitioner's initial rule 3.850 motion, the state court summarily denied the motion giving him leave to amend pursuant *Spera v. State*, 971 So. 2d 754 (Fla. 2007). In *Nelson v. State*, 977 So. 2d 710, 711–12 (Fla. 1st DCA 2008), the First DCA described and further clarified the *Spera* procedure:

> The procedure articulated in *Spera* allows a defendant an opportunity to amend facially insufficient postconviction claims unless the claims cannot be corrected. *See id.* at 755, 761; *see also Prevost v. State*, 972 So. 2d 274 (Fla. 1st DCA 2008) (holding that *Spera* allows the defendant one opportunity to cure the deficient claims within 30 days, and if no amendment is filed within the allowed time, claims may be denied with prejudice). *Spera*'s procedure applies uniformly to all insufficiently pled postconviction claims whether determined to be legally or facially *insufficient*. *Spera*, 971 So. 2d at 761. The trial court has discretion in determining the length of the defendant's leave to amend and *Spera* suggested thirty days would be reasonable. *Id.* Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities. . . .

> Finally, based upon *Spera* and *Nelson v. State*, 875 So. 2d 579, 584 (Fla. 2004), <u>once the window of opportunity to amend expires and the defendant is unable or unwilling to cure the deficiency, the insufficient claim may be denied with prejudice.</u>

> The trial court, upon receipt of a rule 3.850 motion, but prior to ruling on the merits of the entire motion, should review the motion to determine whether any claims are facially or legally insufficient. If any claims are insufficient, the trial court should strike the motion with leave to amend the insufficient claims unless the deficiencies cannot be cured. <u>Should the defendant decline to amend, the defendant may move the trial court to enter a final order of disposition on the motion.</u>

*Nelson*, 977 So. 2d at 711–12 (emphasis by underscoring added). The emphasized

language indicates that Florida's "state collateral review process is 'in continuance,'"
*Carey*, 536 U.S. at 219–20, and is not complete, until the state circuit court issues a
final disposition of the motion.  *Nelson*, 977 So. 2d at 712; *see also Russell v. State*, 46
So. 3d 151, 152 (Fla. 2d DCA 2010) (holding that state circuit court's order dismissing
facially insufficient post-conviction motion without prejudice was not final appealable
order); *Howard v. State*, 976 So. 2d 635 (Fla. 5th DCA 2008) (holding that circuit court's
order denying post-conviction motion without prejudice to amend any claims found in
the order to be "insufficient" was not a final order); *Lee v. State*, 939 So. 2d 154, 155
(Fla. 1st DCA 2006) (holding that circuit court's order finding petitioner's claims in his
Rule 3.850 motion facially insufficient and dismissing motion without prejudice to re-file
facially sufficient motion is "a nonappealable, nonfinal order"); *accord S.L.T. Warehouse
Co. v. Webb*, 304 So. 2d 97, 99 (Fla. 1974) (articulating Florida's general test of finality
as "whether the order in question constitutes the end of the judicial labor in the case,
and nothing further remains to be done by the court to fully effectuate a termination of
the cause as between the parties directly affected.").

Here, while Petitioner amended his 3.850 motion as directed and the state court
ultimately addressed one ground contained in his amended motion, this did not end the
proceedings in state court.  Pursuant to the *Nelson* procedure, even if Petitioner had not
availed himself of the opportunity to amend, the circuit court would have entered a final
order disposing of the Rule 3.850 motion by denying any insufficient claims with
prejudice.  *See Nelson*, 977 So. 2d at 712; *accord Russell*, 46 So. 3d at 152; *Lee*, 939
So. 2d at 155.  It its order granting leave to amend, the postconviction court advised

Petitioner that failure to amend "may result in any further postconviction motion being denied as unnecessarily successive or as having been previously ruled upon in this order." (Ex. AA, doc. 21-4, p. 40).  Thus, the postconviction court expressly advised Petitioner that it eventually would take action on his rule 3.850 motion. However, Petitioner failed to move the court to enter a final order disposing of the motion. Therefore, he failed to exhaust available state court remedies thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *See Duncan*, 513 U.S. at 365 (quotation and  citation omitted)).  Such explicit fair presentation must be made not only to the trial or post-conviction court, but to the state's highest court. *Baldwin v. Reese*, 541 U .S. 27 (2004).  Because Petitioner did not "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim, his claim is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *See Duncan*, 513 U.S. at 365-66; *O'Sullivan*, 526 U.S. at 845; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  Petitioner has not alleged any cause, prejudice or a fundamental miscarriage of justice to overcome the procedural default.  Therefore, this claim is barred from federal habeas review.

Even if this Court ignores any procedural default and considers this claim on the merits, Petitioner has failed to establish ineffective assistance under *Strickland v. Washington*.  Petitioner contends that it was his counsel's duty to argue the unconstitutional acts by the State in filing the motion in limine which prevented the defense from informing the jury that he was not the source of the second semen sample

found during an examination of the victim.[4]  Petitioner has not alleged any grounds

which defense counsel could have argued to keep the motion from being granted.

Additionally, despite the trial court's granting of the motion, the record reflects that

defense counsel, Zachary Ward, attempted to cross-examine Claudette Cleary, a crime

laboratory analyst with the Florida Department of Law Enforcement, about the DNA

sample taken from Petitioner.  (Ex. D, doc. 21-1, p. 310).  The State objected on the

basis of the motion in limine which had been granted, and the court sustained the

objection.  The jury was removed from the courtroom, and Petitioner's counsel

continued his cross-examination on proffer. Mr. Ward asked Ms. Cleary if she found any

genetic material in the sexual assault kit that matched Petitioner's profile, and she

answered that she did not, but she stated that there was a minor foreign donor who

could not be determined.  Ms. Cleary clarified, "[t]here was not enough DNA to

determine the full profile of the minor donor.  So, therefore, a match could not be

determined.  However, [Petitioner] could not be excluded as a donor of that profile."  (*Id.*

at 313).  Mr. Ward then pursued the following line of questioning:

> Q. [Ward]: Your testimony earlier was that DNA can be left in saliva,
> blood, semen, skin cells, hair follicles and other body fluids contain DNA?
> A. [Cleary]: Correct.
> Q.  In addition to internal organs and possibility everything that's in the
> human body?
> A.  Correct.
> Q.  Could the skin cells from a human hand, that detach from a human
> hand contain DNA?
> A.  The skin cells from a human hand, yes, can contain DNA.
> Q.  Okay.  And I guess is it possible to have skin cells from a human hand

---

[4] As discussed in Ground One, the propriety of the motion in limine was not raised on direct appeal and was grounded in state statutory law.

transfer from one person to another if there is contact?
A.  It's possible.
Q.  Is it possible for skin cells from a human hand, or any other part of, I
guess, the human body to transfer from that person's hand or part of their
body to an item of clothing?
A.  Possible.
Q.  And the facilities and the lab and the equipment that you have at the
Florida Department of Law Enforcement would be able to detect those
things if they were present?
A.  If the cells were present in a high enough quantity.
Q.  Okay.  But certainly not definitive?
A.  Not definitive.
Q.  But if skin cells were left for purposes of this argument in pubic hair
and a pubic combing was done, or a vaginal swab was done, would your
testing be able to locate those skin cells?
A.  Possibly.

(*Id.* at 315-16).  The trial court then clarified with Ms. Cleary that while it is possible that

someone could deposit epithelial cells in a woman's vagina by digital penetration, she

had never seen or heard of a case where that happened.  After hearing the proffer, the

trial court stated, "[t]he testimony of the witness is that it's possible to deposit DNA from

skin cells in the fashion that lines up with the testimony that's in evidence from the

alleged victim.  However, it's a mere possibility.  She's never heard of any cases of it. . .

."  (*Id.* at 318).  The court then ruled that there was no evidence that Petitioner

deposited any bodily fluids in or near the victim, so the evidence regarding the skin cells

would be irrelevant.  The court also ruled that whatever relevance such evidence might

have would have the tendency to confuse the jury rather than enlighten them, so the

prejudice would outweigh any probative value.  (*Id.* at 320).  In light of the trial court's

ruling, counsel was given the opportunity to ask Ms. Cleary in front of the jury if she was

given a sample of Petitioner's DNA,  but he was not allowed to ask any follow-up

questions.  Upon the jury's return, counsel asked Ms. Cleary, "were you also given a

sample of Hilton Allen's DNA?" (*Id.* at 327).  She answered, "Yes, I was."  (*Id.*).  Mr.
Ward did not ask any additional questions.

Therefore, the record reflects that defense counsel was attempting to imply that
no evidence from Petitioner was found in the DNA testing without violating the court's
ruling and without eliciting a negative response from the witness, thereby keeping from
the jury her answer that the partial DNA profile did not exclude Petitioner.  Defense
counsel also argued in his rebuttal closing argument "[a]nd you will certainly find, based
on the fact that Mr. Hilton Allen did give a DNA sample, and there were no results on
him, you will certainly find that he is not guilty of the crime that he's charged with." (Doc.
21-2, p. 88).  Petitioner has failed to demonstrate what more counsel could have done
to present this evidence to the jury without violating the trial court's ruling on the motion
in limine.  Finally, Petitioner has failed to establish prejudice.  The fact that the victim
may have had sexual relations with another party does not disprove her lack of consent
as to Petitioner. Petitioner has failed to establish ineffective assistance under *Strickland*.
Thus, even if this claim were not procedurally barred, it is without merit.  Accordingly,
Petitioner is not entitled to habeas relief, and ground three is denied.

Ground Four:        Ineffective Assistance of Counsel/ Victim's Delay in Attending Trial

Petitioner alleges that the victim was not present at the beginning of the trial, and
he speculates that this delay was because she did not want to attend the trial and
consequently was forced by the State to participate. (Doc. 9, p. 5). Petitioner contends
that his counsel should have argued for a dismissal or a mistrial based on the victim's
initial absence at trial.  Respondent argues that this claim is procedurally barred.

1.      State Court Proceedings

While Petitioner raised this issue in his 3.850 motions, as discussed *supra* the postconviction court did not enter a final order ruling on the remaining claims in his amended postconviction motion, and Petitioner did not move for a final order on his amended postconviction motion in state court.

2.      Clearly Established Supreme Court Law

The law regarding procedural default and ineffective assistance of counsel claims is set forth *supra*.

3.      Federal Review of Claim

This claim is not exhausted for the same reasons explained in Ground Three, section three, *supra*, so this claim is procedurally barred from federal habeas review. Petitioner has not alleged any cause, prejudice or a fundamental miscarriage of justice to overcome the procedural default.  Even if this Court ignores any procedural default and considers this claim on the merits, Petitioner has failed to establish ineffective assistance under *Strickland*.  The record reflects that at the start of the trial on August 1, 2006, the trial court pointed out that the victim was not in court.  The state attorney, Mark Johnson, informed the court that his office spoke with the victim the day before and informed her of the early start time.  Mr. Johnson then stated, "we did speak to them yesterday, and we were told that they would be here.  I have not received any indications throughout this process that she was uncooperative or would not appear today.  So I have every reason to believe that she would be here."  (Ex. D, doc. 21-1, p. 208).  The record reflects that after a brief pause, the court advised the witnesses of the

sequestration rule, and the trial proceeded.  (*Id.* at 209). The victim was the State's first witness.

Petitioner has failed to raise any cognizable federal claim based on the late arrival of a witness, which does not implicate any federal right nor is it the basis for a mistrial or dismissal of the case. Thus, even if this claim were not procedurally barred, Petitioner cannot establish ineffective assistance under *Strickland v. Washington.* Accordingly, Petitioner is not entitled to habeas relief, and ground four is denied.

Ground Five:          Ineffective Assistance of Counsel/ Abandoned Case Upon Filing
                               Notice of Appeal & Conflict of Interest

Petitioner contends that his trial counsel filed a notice of appeal and then abandoned him by withdrawing from the case.  Petitioner also argues ineffective assistance of counsel as a result of his defense counsel's agreeing to a joint trial with his co-defendant. (Doc. 9, p. 7 continuation page). Respondent argues that this ground is procedurally barred.

1.     State Court Proceedings

While Petitioner raised this issue in his amended 3.850 motion, as discussed *supra*, the postconviction court did not enter a final order ruling on the remaining claims in his amended postconviction motion, and Petitioner did not move for a final order on his amended postconviction motion in state court.  Respondent contends that there was no state court ruling on this claim, and that if the claim is not procedurally barred, it should be reviewed de novo and denied on the merits. (Doc. 21, pp. 20-21).[5]

_____

[5] After Petitioner filed his amended 3.850 motion, the postconviction court issued an order to show cause directed to the State on "why Defendant should not be **resentenced** in light of the claims

2.      Clearly Established Supreme Court Law

The law regarding procedural default and ineffective assistance of counsel claims

is set forth *supra*.

3.      Federal Review of Claim

This claim is not exhausted for the same reasons explained in Ground Three,

section three, *supra*, so this claim is procedurally barred from federal habeas review.

Petitioner has not alleged any cause, prejudice or a fundamental miscarriage of justice

to overcome the procedural default.  Even if this Court ignores any procedural default

and considers this claim on the merits, Petitioner has failed to establish ineffective

assistance under *Strickland v. Washington*. As to Petitioner's claim of abandonment of

his counsel on appeal, the record reflects that Petitioner was represented by James

Banks on appeal, (*see* Ex. A, doc. 21-1, p. 108), and no where in his petition does

Petitioner contend that his trial counsel refused to confer with his appellate counsel nor

does Petitioner assert an ineffective assistance of appellate counsel claim.  Further,

Petitioner does not have a constitutional right to choose which counsel will represent

him on appeal.  *See Caplin & Drysdale, Chartered v. U.S.*, 491 U.S. 617, 624

(1989)("The [Sixth] Amendment guarantees defendants in criminal cases the right to

adequate representation, but those who do not have the means to hire their own

---

raised in **Ground 36**."  (Ex. DD-1, doc. 21-6, p. 53, emphasis in original).  Petitioner responded to this order and did not dispute that this ground concerned his re-sentencing claim.  The court then issued a second show cause order requiring the State to address "**why Defendant should not be resentenced in light of the claim raised in Ground 36 regarding his right to be present at the previous resentencing hearing**."  (Ex. EE-1, *id.* at 63, emphasis in original).  The State agreed to the re-sentencing, making no additional response to any other claim.  (Ex. EE-2, *id.* at 65-66).  Neither the court nor either party noticed that the conflict of interest claim was effectively dropped.

lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts. '[A] defendant may not insist on representation by an attorney he cannot afford.'" (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)).

As to Petitioner's claim that his joint trial resulted in a conflict of interest, the record reflects that the facts of the case did not pit one defendant against the other.  Co-defendant Jack Allen's defense was consent, and his trial testimony was consistent with Petitioner's that Petitioner was the driver of the car, but that Petitioner got out of the car and stood away from the car while he and the victim had consensual sex.  In Jack Allen's counsel's opening statement, he informed the jury that Petitioner was uninvolved during Jack Allen's brief sexual encounter with the victim.  (*See* doc. 21-1, pp. 228-29). Additionally, Jack Allen's testimony about the event supports Petitioner's version of events, namely that he drove the pair to McDonald's, then out of town and got out of the car when Jack Allen and the victim decided to have consensual sex.  (*See* doc. 21-2, pp.13-15).  Jack Allen also testified that Petitioner did not hold down or restrict the victim nor did Petitioner have any sexual contact with the victim.  Finally, both defense counsels' closing arguments supported each other.

Having separate trials would not have kept out any "damaging" evidence against Petitioner, as it was primarily the victim's testimony which tended to incriminate him. Further, by trying the case jointly, the jury had the opportunity to decide that Petitioner was less culpable or credible than Jack Allen by comparison.  Jack Allen's defense was consent, which if believed by the jury, would have tended to exonerate Petitioner as well.  Thus, Petitioner's counsel's decision to agree to a joint trial is a reasonable

strategic decision under *Strickland*.  Finally, while under the Sixth Amendment a criminal defendant is entitled to conflict-free representation, in order to obtain habeas relief where the defendant raised no objection at trial, the defendant must demonstrate an actual conflict of interest adversely affected his counsel's performance.  *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)(in a case involving a conflict of interest based on the representation by one attorney of multiple defendants, the Court held, "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.").  The Eleventh Circuit has held that a "mere hypothetical conflict will not suffice to establish a violation under *Cuyler*."  *Smith v. White*, 815 F. 2d 1401, 1404 (11th Cir. 1987).  *See Freund v. Butterworth*, 165 F. 3d 839, 859 (11th Cir. 1999)("[a]n 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.' . . .  In order to prove that an 'actual conflict' hindered petitioner's lawyer's performance, petitioner 'must make a factual showing of inconsistent interests' or point to 'specific instances in the record' to suggest an actual impairment of his or her interests." (citations omitted)); *Hamilton v. Ford*, 969 F.2d 1006, 1011-12 (11th Cir. 1992)(". . . the established precedent of this circuit [is] that in the absence of a timely objection, a defendant must demonstrate that there was an actual conflict of interest that adversely affected her attorney's performance.").

Petitioner has failed to allege any facts which demonstrate any abandonment by his trial counsel or any actual conflict of interest as a result of his being tried jointly with Jack Allen.  Petitioner has failed to demonstrate any ineffective assistance in this

ground.  Therefore, even if this claim were not procedurally defaulted, it is without merit.

Accordingly, Petitioner is not entitled to habeas relief, and ground five is denied.

Ground Six:   Unlawful Conviction and Sentence

In this ground Petitioner appears to allege that the case against him was factually
deficient.  He claims that there was no physical evidence that he committed sexual
battery on the victim and that his DNA was not found as part of the sexual assault
examination.  (Doc. 9, p. 7 continuation page).  Respondent has addressed this ground
as a sufficiency of the evidence claim and contends that the facts of the crime satisfies
*Jackson v. Virginia*, 443 U.S. 307, 319 (1979)("the relevant question [in a sufficiency of
the evidence claim] is whether, after viewing the evidence in the light most favorable to
the prosecution, any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt.").

1.      State Court Proceedings

Petitioner did not raise this issue in his direct appeal.  He first raised this issue in
his 3.850 motions.  As discussed *supra*, the postconviction court did not enter a final
order ruling on the remaining claims in his amended postconviction motion, and
Petitioner did not move for a final order on his amended postconviction motion in state
court.

2.      Clearly Established Supreme Court Law

The law regarding procedural default is set forth *supra*.  As to sufficiency of the
evidence claims, in *Jackson v. Virginia*, the Court held that the standard applicable to a
state prisoner's claim that the evidence was constitutionally insufficient to support his

conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*, 443 U.S. at 318-19, *overruled on other grounds by Schlup v. Delo*, 513 U.S. 298 (1995). The Supreme Court instructed that this standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16.  A federal habeas court reviewing a state criminal judgment for sufficiency of the evidence must presume the jury resolved any conflicting inferences arising from the facts in favor of the State and against the defendant. *Id.* at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319; *see Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001) ("Federal [habeas] courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence.") (citation omitted)). The test under *Jackson* is a limited one, and it does not require that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt. *Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir.1982); *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir.1987) ("The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief.").

3.      Federal Review

Under Florida law, insufficiency of the evidence claims should be raised on direct

appeal and cannot be raised in postconviction.  *See Jackson v. State*, 640 So. 2d 1173,

1174 (Fla. 2d DCA 1994)(insufficiency of evidence claims are not cognizable in

postconviction proceedings).  Because Petitioner did not raise this claim on direct

appeal, this claim is not exhausted for the same reasons explained in Ground One,

section three, *supra*, so it is procedurally barred from federal habeas review.  Petitioner

has not alleged any cause, prejudice or a fundamental miscarriage of justice to

overcome the procedural default.

Even if this Court ignores any procedural default and considers this claim on the

merits, Petitioner has failed to establish a claim for relief under *Jackson*.  Petitioner was

convicted of sexual battery pursuant to Fla. Stat. §794.011(5)(2002) which criminalizes

the "sexual battery upon a person 12 years of age or older, without that person's

consent, and in the process thereof does not use physical force and violence likely to

cause serious personal injury."   A review of the trial transcript shows that the victim

clearly identified Petitioner as the man who drove the car the night of the crime.  She

also testified that Petitioner came around to the backseat of the car where she was

seated, pulled her pants off and put his hands between her legs and penetrated her

vagina with his fingers without her consent. (*See* doc. 21-1, p. 240).  Petitioner's

testimony, on the other hand, was that the victim and Jack Allen had consensual sex,

but that he did not have any sexual contact with the victim. Viewing the evidence in the

light most favorable to the State, a rational trier of fact could find beyond a reasonable

doubt that Petitioner did commit a sexual battery of the victim.  Thus *Jackson* is satisfied in this case.  Accordingly, Petitioner is not entitled to habeas relief, and ground six is denied.

Ground Seven:      Illegal Enhancement, Reclassification and Illegal Departure from Recommended Guidelines

Petitioner contends that his original sentence was illegally enhanced and that the State and the court admitted that there were errors in his original sentencing.  (Doc. 9, pp. 8-9 continuation pages).

1.      State Court Proceedings

Following his conviction for sexual battery Petitioner was sentenced to seven years incarceration followed by seven years sex offender probation, his crime was reclassified as a first degree felony, and he was designated a sexual predator.  (*See* doc. 21-4, p. 66).  Petitioner appealed, and his direct appeal was dismissed but reinstated. On August 4, 2008, the First DCA reversed and remanded, holding that the reclassification of Petitioner's crime from a second degree felony to a first degree felony was improper. (Ex. K). On November 4, 2008, Petitioner was re-sentenced to correct the improper enhancement of the crime.  (*See* Ex. L, doc. 21-4, pp. 43-54).  Petitioner was re-sentenced again in May 2012 because he was not present for the November 2008 re-sentencing.  His sentence remained the same.

2.      Clearly Established Supreme Court Law

Petitioner has not identified any Federal law with regard to this claim, and this Court cannot discern a constitutional violation with respect to this claim.

3.      Federal Review of Claim

While the reclassification of Petitioner's sentence was improper under Florida law, this error was corrected upon remand to the trial court where a new judgment for a second degree felony was imposed.  The length of the original sentence, seven years incarceration followed by seven years sex offender probation, however, remained the same.  This sentence is within the fifteen-year maximum specified by Fla. Stat. § 775.082(3)(c)(2005) for a felony of the second degree.  Petitioner has failed to raise a Federal constitutional issue in this ground. Accordingly, Petitioner is not entitled to habeas relief, and ground seven is denied.

Ground Eight:        Manifest Injustice and Fundamental Unfairness

In this ground Petitioner argues that keeping the information about the second unidentified semen source found during an examination of the victim from the jury deceived and mislead the jury and resulted in his erroneous conviction for the crime. Petitioner argues that had the jury been aware that the victim was "sexualy [sic] promiscuous," they would not have rendered a guilty verdict.  (Doc. 9, p. 9 continuation page).  Here, Petitioner raises essentially the same prosecutorial misconduct claim raised in Ground One and/or the same sufficiency of the evidence claim raised in Ground Six, and this claim is denied for the reasons explained in Grounds One and Six *supra.*  Accordingly, Petitioner is not entitled to habeas relief, and ground eight is denied.


Ground Nine:        Harmful Error

In this ground Petitioner restates the same claim he raised in Ground Seven with

regard to the improper reclassification of his crime, and he raises issues with regard to the sentencing guidelines applied in his case.  (Doc. 9, p. 10 continuation page).  This claim is denied for the same reasons explained in Ground Seven *supra*. To the extent that Petitioner is making a claim that the state court violated Florida's sentencing guidelines, the failure to follow sentencing guidelines, without more, does not state a federal claim.  *See Pulley v. Harris*, 465 U.S. 37, 41 (1984)(holding that a "federal court may not issue the writ on the basis of a perceived error of state law."); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)("In the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures.").  Accordingly, Petitioner is not entitled to habeas relief, and ground nine is denied.

Ground Ten:  Vindictive Prosecution

Petitioner contends that when he spoke to the court during sentencing about the lack of evidence against him, the prosecutor vindictively invoked a more serious charge against him without any fact-finding of guilt.  (Doc. 9, p. 10 continuation page).  Respondent contends that this ground is procedurally barred because it was not raised on direct appeal.

1.      State Court Proceedings

Petitioner did not raise this claim on direct appeal.

2.      Clearly Established Supreme Court Law

The law regarding procedural default is set forth *supra*.

3.      Federal Review of Claim

Under Florida law, claims of prosecutorial misconduct should raised on direct appeal.  *See Johnson v. State*, 104 So. 3d at 1029.  Because Petitioner did not raise this claim on direct appeal, this claim is not exhausted for the same reasons explained in Ground One, section three, *supra*, so it is procedurally barred from federal habeas review.  Petitioner has not alleged any cause, prejudice or a fundamental miscarriage of justice to overcome the procedural default.  Accordingly, Petitioner is not entitled to habeas relief, and ground ten is denied.

Ground Eleven:        Reversal Error

In his final ground, Petitioner again raises a claim about his illegal sentence and the error in the reclassification of his crime.  Petitioner also argues that the alleged sexual battery occurred on May 9, 2005, not May 10, and that the charging document and other testimony is in error on this fact.  (Doc. 9, pp. 11-12 continuation pages).  Respondent alleges that this ground is an amalgam of alleged trial and sentencing court errors, none of which were raised on direct appeal, so they are procedurally barred.

1.      State Court Proceedings

The error in the reclassification of his crime was corrected by Petitioner's re-sentencing in state court. As to the other claims made in this ground, Petitioner did not raise them on direct appeal in state court.

2.      Clearly Established Supreme Court Law

The law regarding procedural default is set forth *supra*.

3.      Federal Review of Claim

Because Petitioner did not raise these claims on direct appeal, they are not exhausted for the same reasons explained in Ground One, section three, *supra,* so they are procedurally barred from federal habeas review.  Petitioner has not alleged any cause, prejudice or a fundamental miscarriage of justice to overcome the procedural default. Additionally, to the extent that Petitioner is raising the same claims he raised in Grounds Seven and Nine, this ground is denied for the same reasons explained therein *supra*.  Finally, as to the alleged discrepancy surrounding the date of the offense, in Florida, "time is not ordinarily a substantive part of an indictment or information and there may be a variance between the dates proved at trial and those alleged in the indictment or information as long as: (1) the crime was committed before the return date of the indictment; (2) the crime was committed within the applicable statute of limitations; and (3) the defendant has been neither surprised nor hampered in preparing his defense." *Tingley v. State*, 549 So. 2d 649, 651 (Fla.1989).  Accordingly, Petitioner is not entitled to habeas relief, and ground eleven is denied.

## Conclusion

Based on the foregoing, Petitioner Hilton Allen is not entitled to federal habeas relief.  The amended § 2254 petition (doc. 9) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.  Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner Allen's amended § 2254 petition (doc. 9).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 3, 2015.

S/  Charles A. Stampelos

**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**